UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CR-20063

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMAL LAMAR HEAD, and
KEON TRAVY GLANTON

    Defendants.

_____

## DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on March 7, 2019, a hearing was held to determine whether Defendants Jamal Lamar Head and Keon Travy Glanton, should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of these Defendants as required, nor reasonably assure the safety of any other person and the community. Therefore, it is hereby ordered that Defendants Jamal Lamar Head and Keon Travy Glanton be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for detention:

1. Defendants are charged by indictment with multiple acts of robbery and an act of carjacking resulting in death. Jamal Lamar Head is charged in twelve counts for his alleged participation in three separate events with conspiracy to commit and committing three separate Hobbs Act Robberies, in violation of 18 U.S.C. § 1951(a) (Counts 1, 2, 4, 6); brandishing and discharging a firearm, and causing the death of a person, in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 3, 5, 9, 10); kidnapping

1

resulting in death in violation of 18 U.S.C. § 1201(a)(1) (Count 7); carjacking resulting in death in violation of 18 U.S.C. § 2119(3) (Count 8); possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g) (Count 11), and arson in violation of 18 U.S.C. § 844(i) (Count 12).

2. Defendant Keon Travy Glanton, is identically charged, except he is not charged with the acts arising from the first alleged Hobbs Act robbery (Counts 2-3). The maximum penalty that may be imposed with respect to Count 10, in which both Defendants are charged, is death.

3. The weight of the evidence against Defendants is substantial. The Government proffered that on July 9, 2018, P.T.B., a plumber, was contacted by a woman seemingly interested in the victim's plumbing services. The woman provided P.T.B. with an address to a property where the purported plumbing issue took place. P.T.B. arrived at the property and was met by Defendant Head who threatened to shoot P.T.B. if he did not turn over his property to Defendant Head. Head stole a $3,000 plumbing tool and the victim's wallet. The victim later definitively identified Head from a line-up. Cell-site information puts Head's cellular phone in the vicinity of the crime at the time of the alleged robbery.

4. On July 11, 2018, a second robbery occurred in Rivero Beach, Florida. D.S., a plumber, was dispatched to a property to repair a plumbing issue. When D.S. arrived at the property he was met with another car containing two men and a woman. One of the assailants struck D.S. in the head and punched him until the victim fell to the ground. The assailant grabbed D.S.'s car keys and handed them to the second man and the woman, directing them to take specific plumbing equipment from D.S.'s vehicle. The assailants stole $3,000 in plumbing equipment and the victim's wallet. D.S. called 911 and was later found at the scene,

bleeding profusely from his head. D.S. later identified Head as the man who struck him and directed the other two assailants. Two or three hours after the robbery, gas station surveillance shows Defendant Glanton using D.S.'s credit card to purchase gas. Cell-site information similarly places Head and Glanton in the vicinity of the second robbery. Head's fingerprint was later lifted from D.S.'s phone.

5. Cellular phone records indicate that on July 12, 2018, Glanton contacted a third plumbing service, spoke to the business owner, and scheduled a service call at a third property. The owner referred Glanton to L.S.H., the owner's roommate and business associate. Phone records evidence that Glanton called L.S.H. several times and that L.S.H. returned Glanton's phone calls. When L.S.H. arrived at the property, he was confronted with Glanton and Head, who forced the victim into the rear of a Volkswagen that Head had rented the day before. Head drove the rental vehicle away from the scene, and Glanton followed in the victim's white van. The victim and Head struggled in the car before Head shot the victim in the head and the chest, causing the victim's death. Head then crashed the rental car and was apparently injured in the crash. Phone records reveal a fourteen-minute phone call between Glanton and Head immediately after the car crash. Video surveillance of the neighborhood shows Head's rental vehicle in the neighborhood before the robbery, and similarly captured images of Head running south from where the car crashed and getting into a car matching a description of the victim's van. Glanton drove the van south, where he eventually burned the van.

6. A search of the rental vehicle revealed items that Head and Glanton purchased at a gas station, a rental receipt in Head's name, victim D.S.'s license, and Glanton's debit card. Moreover, Head's blood was recovered from the airbag of the rental car. A search of a

nearby storm drain resulted in the recovery of a pistol, which was confirmed to be the murder weapon. In the same vicinity, law enforcement recovered a toiletries bag containing a toothbrush, from which law enforcement extracted DNA matching Head's. After Glanton was arrested and read his *Miranda* rights, Glanton admitted he was with Head on the days of the robberies, and identified himself from the surveillance images, but denied participation in the robberies.

7. The pertinent history and characteristics of Defendants support pretrial detention. Head is a lifelong resident of South Florida and resided with his mother in Miami. Head's father is deceased, and his brother is in prison. Head has been detained at the Miami-Dade Pretrial Detention Center since July 2018.

8. Head has an extensive criminal record involving violent and controlled substance crimes. Head has been convicted of attempted second-degree murder, illegally carrying a concealed firearm, cocaine possession, cannabis possession, resisting an officer without violence, and armed robbery with a deadly weapon. Further, Head has violated the terms of his probation, resulting in a revocation or modification of his probation terms at least two times.

9. The undersigned finds that Head would be unlikely to appear if released on bond prior to trial: Head has an extensive criminal record, evidencing an ongoing disregard for the law; he has violated his probation two times, suggesting that he is not amenable to court supervision; apart from his mother, he lacks family support; and, if convicted, he faces a death penalty sentence. The Court specifically finds, by a preponderance of the evidence, that there are no conditions or combination of conditions, which reasonable assure Head's appearance as required.

10. Head also constitutes a danger to persons in the community. At thirty-two years of age, Head has been convicted of several violent criminal offenses, including attempted second-degree murder. Taking into account the characteristics of Defendant Head and the nature of the present offense, the Court finds by clear and convincing evidence that there are no conditions which will reasonably assure the safety of other persons and the community.

11. Similarly, Defendant Glanton's pertinent history and characteristics support pretrial detention. Glanton is a lifelong resident of South Florida. Glanton has been in state custody since July 2018, serving a jail sentence on a Miami-Dade state case. He resided with his father before being taken into state custody. Glanton has three siblings and five children who reside in South Florida.

12. Glanton has been convicted of resisting an officer without violence. Glanton has also been charged with controlled substance offenses, including possession of cannabis, possession of cocaine, and possession of drug paraphernalia.

13. Therefore, the undersigned finds that Glanton would be unlikely to appear if released on bond prior to trial: he has a significant criminal record, signaling a disregard for the law; he is unemployed and besides his father, appears to lack community and familial support; and, if convicted, Glanton faces the death penalty. The Court specifically finds, by a preponderance of the evidence, that there are no conditions or combination of conditions, which reasonable assure Glanton's appearance as required.

14. Glanton also constitutes a danger to persons in the community. At thirty-two years of age, Glanton has been charged with several violent criminal offences, including attempted second-degree murder, and presently stands charged of Hobbs Act Robbery resulting in the death of victim L.S.H. The Court finds by clear and convincing evidence that there are no

conditions which will reasonably assure the safety of other persons and the community. Accordingly, the Court hereby directs:

(a) That Defendants Jamal Lamar Head and Keon Trevy Glanton be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

(b) That Defendants Jamal Lamar Head and Keon Trevy Glanton be afforded reasonable opportunity for private consultation with counsel; and

(c) That, on order of a court of the United States or upon request of an attorney for the Government, the person in charge of the corrections facility in which the Defendants are confined deliver the Defendants to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** in Chambers at Miami, Florida on this 11th day of March 2019.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE